United States Court of Appeals
Fifth Circuit

**F I L E D**

June 28, 2004

Charles R. Fulbruge III
Clerk

REVISED JULY 30, 2004

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

Nos. 03-10074
and 03-10220

_____

NEOMA SHAFER; ET AL.,

Plaintiffs.

JUDITH ANN PARKS,

Plaintiff - Appellee,

versus

ARMY & AIR FORCE EXCHANGE SERVICE;
UNITED STATES DEPARTMENT OF DEFENSE,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Northern District of Texas

_____

Before JOLLY, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The Plaintiff-Appellee, Judith Ann Parks, was awarded over $1,000,000 in compensatory damages and attorneys' fees by the district court. This award followed the district court's wholesale adoption of the factual findings and legal recommendations of a report prepared by a special master. A central dispute in this confusing case concerns whether the special master exceeded his authority by considering claims made by Parks in a separate

lawsuit, which was never formally referred to the special master or otherwise consolidated with the contempt proceeding arising from a related lawsuit, which was properly before the special master. We conclude that the special master did exceed the scope of his appointment by hearing, and addressing in his report, claims that were not properly before him. It follows that the district court's adoption of the findings and recommendations relating to the unreferred case constitutes reversible error. We therefore REVERSE the judgment in favor of the plaintiff on those claims. As to the district court's findings with respect to the claims that were properly before the special master, we also REVERSE but on other grounds.

I

A

The genesis of this appeal is a very old Title VII sex discrimination suit filed in 1976 against The Army and Air Force Exchange Service ("AAFES") -- a federal instrumentality that operates Post Exchanges and Base Exchanges for military personnel. That case, Shafer v. AAFES, 667 F.Supp. 414 (N.D.Tex. 1985), was eventually settled in an agreement approved by the district court in 1987. The settlement agreement did not conclude the entire case, however; the claims of four AAFES employees, including Plaintiff-Appellee Parks, proceeded as individual discrimination suits. Parks's individual case was eventually referred by the district court to a special master, who recommended that Parks be

awarded back pay, retroactive promotions, and other relief. The district court adopted the master's report and entered final judgment on Parks's claim in January 1988. In pertinent part, the judgment ordered AAFES to promote Parks to pay grade UA14 retroactive to April 1981, to amend Parks's personnel files to reflect her promotion, and to give Parks "priority placement" into a supervisory position; further, the judgment enjoined AAFES "from any form of retaliation against Judith Ann Parks." The judgment was not appealed.

In accordance with that judgment, AAFES promoted Parks to grade UA14 and made her chief of one branch of the Information Systems Directorate, Systems Development Division ("IS-D"). That final judgment was anything but final, however, as far as the dispute between Parks and AAFES is concerned. Beginning in 1993, Parks began once again to experience workplace incidents that she contended were discrimination and retaliation. First, in early 1993, AAFES established a new directorate for Change Management and needed to fill eight positions for Project Managers. Tom Saga, Park's immediate supervisor, asked several people, including Parks, whether they were interested in the position. Saga told Parks that it would be a lateral UA14 position, and Parks therefore declined it. Robert McFarland was then selected for the position, which was soon after reclassified as a UA15 position. Parks contends that the government knew the new position would be UA15 but

3

intentionally waited until after she had declined the job and McFarland had accepted before it reclassified it.

Parks also contended that the discrimination and retaliation continued in 1994. On her Performance Evaluation Report ("PER") for that year, which was completed by Saga and his superior, James McKinney, Parks received a poor mark in a section (called the "diamond") that rated an employee's relative promotion potential. According to Parks, she was given a low score in the diamond so that men could be promoted ahead of her. Three men in the Information Systems Directorate were promoted to UA15 in 1994, but Parks was not.

Finally, in May 1995, the curtain appeared to fall on the long-running battle between Parks and AAFES when Parks accepted a voluntary offer of early retirement made generally available to AAFES's employees in response to budget cuts. Not so. Despite the voluntary nature of her retirement, however, Parks nevertheless soon maintained that she was constructively discharge. She alleged that her decision to quit was directly brought on by years of discrimination, escalating retaliation, and the realization that (had she remained at AAFES) her poor ratings would make any promotion in the next several years highly unlikely.

B

In this connection, Parks had earlier filed a series of complaints with the AAFES's internal EEO office, beginning in April 1994 and continuing through May 1995. Additionally, in June 1994,

4

Parks began this present action -- she filed a motion to have AAFES held in contempt of the 1988 Shafer judgment.  In this motion, she asserted that AAFES had violated the 1988 judgment by: (1) failing to correct personnel records to reflect Parks's retroactive promotion, (2) failing to give her priority placement in a suitable UA14 supervisory position within a reasonable time after the judgment, and (3) retaliating against her by passing over her for promotions to UA15 positions and giving her poor performance evaluations.  The motion further stated that AAFES had "continued to discriminate against Judith Ann Parks with regard to promotions and had retaliated against her because of her participation in this lawsuit, the Court's retroactive promotion of her, and her subsequent claims of discrimination and retaliation."  The motion asked the court to hold AAFES in contempt and to order the agency, inter alia, retroactively to promote Parks to UA15, to provide her with back pay to match the UA15 salary, and to pay her other compensatory and punitive damages.

On April 3, 1995, the district court appointed John Albach, who had served as special master in the earlier Shafer proceedings, to serve as the special master for the purpose of holding hearings and making a report and recommendation to the court on Parks's contempt motion.  Invoking Rule 53 of the Federal Rules of Civil Procedure, the district court issued a referral order, setting out the specific claims and issues before the special master.

5

Specifically, the order directed the special master to consider Park's "Motion to Hold the Defendants in Contempt." The order further delineated the precise claims at issue in that motion as set out by that motion: to wit, (1) AAFES' failure to correct Park's personnel records, (2) its failure to grant her priority placement, and (3) its alleged retaliation and discrimination against her.

In August 1995, Parks filed a separate and independent Title VII complaint styled Parks v. Perry. This occurred fourteen months after filing the contempt motion and four months after that contempt motion had been referred to the special master. The complaint referred specifically to three incidents that allegedly constituted discrimination and retaliation: (1) the selection of McFarland instead of Parks for the UA15 Change Management position, (2) the manipulation of Parks's 1994 PER, and (3) the failure to promote Parks to UA15 in May 1994. The complaint stated that its claims were "closely related" to Park's contempt motion in Shafer, and the complaint requested that it be joined with the contempt proceeding pending before Judge Buchmeyer. The complaint also stated, however, that Parks "in no way represents or concedes that her claims of contempt are affected or replaced by this lawsuit." Parks's lawyer would later explain that the separate action was filed to make sure that "all bases were covered."

C

6

What happened next to Parks v. Perry is a matter of great confusion and dispute in this case. Accordingly to Parks, Judge Buchmeyer consolidated Parks v. Perry with the contempt motion and referred it to the special master. Yet, there is no formal indication in the record that this ever occurred. The district court docket sheet does show that Parks v. Perry was reassigned to Judge Buchmeyer on September 26, 1995. Two days later, however, Parks v. Perry was closed without any indication as to why, except for a cryptic final docket entry stating: "Case closed per chambers." Strangely, this ambiguous docket entry is the only official indication in the record concerning the fate of Parks v. Perry. Most significantly, no formal Rule 42(a) order consolidating Parks v. Perry with the contempt motion was ever entered; nor was the Rule 53 order referring the contempt motion to the master ever amended to include such expanded authority.

The only other indication in the record concerning the status of Parks v. Perry creates even more procedural incoherence. Apparently, its confused status was the subject of discussion between the parties and the special master in January 1996. Following a telephone call among them, Parks's lawyer wrote to the master that the parties had asked one of Judge Buchmeyer's clerks in October 1995 about the status of Parks v. Perry and were told that "Parks v. Perry had been administratively closed because all claims raised in Parks v. Perry were before the Court in Shafer."

7

A few days later, the master wrote to the parties, stating that he had spoken to Judge Buchmeyer "regarding the question raised concerning the status of Parks v. Perry" and that the judge had stated that "all claims will be handled by the Special Master and that Parks v. Perry is administratively closed." He further stated that this meant AAFES was "not required to file an answer to Parks v. Perry and [Parks] must bring all of her claims before the master in Shafer v. AAFES."

This statement by the special master, however, did little to resolve the parties' differing interpretations regarding the ongoing status of Parks v. Perry. Parks apparently assumed that the district court had, in fact, consolidated the two cases and referred them both to the special master. AAFES, on the other hand, interpreted this statement to mean that, given the numerous similar claims and issues presented by the contempt motion and Parks v. Perry, Judge Buchmeyer had decided to suspend the latter pending the resolution of the former, and that the special master would be confined to an examination of Parks's contempt claims alone.

D

Significantly, it seems neither party was aware of the other party's differing conclusions regarding the status of Parks v. Perry until later in the case. In retrospect, these divergent conclusions were understandable, given the fact that either of

8

these interpretations can be drawn from the special master's statement, especially when no formal document existed (like a Rule 42(b) consolidation order or Rule 52 referral order) that would indicate to either party that their respective understanding was correct or incorrect. Accordingly, both parties proceeded with the contempt suit before the special master, both apparently thinking that they understood the nature of what that suit entailed.[1]

Parks supplemented her original contempt motion by including later retaliatory incidents, including her constructive discharge claim. The master eventually held evidentiary hearings in April and May 1996 with testimony from over thirty witnesses. Over two-and-a-half years later, in December 1998, the master finally issued his eighty-page report and recommendations. The master, who apparently assumed that Parks v. Perry had been consolidated with the contempt motion and referred to him, made the following recommendations, among others: (1) AAFES was in contempt of court for failing to update all of its personnel records, entitling Parks to $10,000; (2) AAFES had discriminated against Parks in the selection of McFarland for the UA15 Change Management position, entitling Parks to back pay and increased retirement benefits; (3) AAFES retaliated against Parks for filing EEO complaints and the

---

[1]At some point in time, AAFES did become aware of the fact that the special master believed that both cases were before him. Once it recognized this, it consistently reminded the master that this was a contempt proceeding and that he should confine the scope of his inquiry accordingly. See n. 4 *infra*.

*Shafer* contempt motion, entitling Parks to $52,000 ($100 per day for the period of the retaliation); (4) Parks was constructively discharged, entitling Parks to front pay from the date of her early retirement until the date of her previously scheduled retirement a few years later, offset by retirement benefits; and (5) AAFES should have its personnel policies reviewed by an outside agency, a form of relief Parks had not requested. In 2000, the district judge adopted all of the master's recommendations, awarding Parks $315,098 in front-pay, back pay and other compensatory relief, increased retirement benefits to reflect what they would have been but for AAFES' discrimination and her constructive discharge (an amount estimated by AAFES to be worth over $600,000 in present value terms), and over $400,000 in attorneys' fees and costs.

AAFES appealed, and this court vacated and remanded on the grounds that Judge Buchmeyer did not review the hearing record before adopting the master's recommendations. *Shafer v. AAFES*, 277 F.3d 788 (5th Cir. 2002). On remand, the district court again adopted the master's recommendations "in their entirety" in a terse order.

AAFES now appeals again. In this appeal, it contends that because *Parks v. Perry* was not properly before the special master, the district court erred in adopting the special master's findings and recommendations with respect to any claims arising from that

separate Title VII suit.[2]  As to the remaining claims related to the contempt proceedings, AAFES asserts that we either should dismiss them on jurisdictional grounds or reverse and render because these claims are unsupported by sufficient evidence.

II

As an initial matter, we must determine whether <u>Parks v. Perry</u> was properly before the special master and, by extension, the district court.  Performing this task, however, is unusually complicated.  The master apparently believed, as did the district court, that <u>Parks v. Perry</u> had been consolidated with the contempt action and referred to him.  Curiously, however, there is absolutely no formal or informal record evidence to indicate that consolidation and referral ever occurred.  In particular, as we have noted, there is no Rule 42(a) order officially consolidating the cases, <u>see</u> Fed. R. Civ. P. 42(a), nor, despite clear language in the Federal Rules requiring such, is there a Rule 53 order referring the <u>Parks v. Perry</u> claims to the special master.[3]

---

[2]AAFES made the same contention in its first appeal to this court.  However, because this court was forced to remand the case on other grounds, it never addressed this question in its decision. <u>Shafer</u>, 277 F.3d at 790 n.1.

[3]Rule 53(b) of the Federal Rules of Civil Procedure mandates that a district court referring a case to a special master must comply with several procedural requirements.  Chief among them is the requirement that the court produce a written order referring the case to a special master that states and defines the scope of the master's duties and limits, if any, on his authority. <u>See</u> Fed. R. Civ. P. 53(b)(2).  There is such a referral order in this case – the original order entered approximately four months before <u>Parks v. Perry</u> was filed, referring the pending contempt motion to the

11

This case is unusual in another important way as well. Although as a general matter, the failure to comply with formal procedural requirements is not always grounds for reversing a judgment, in this case the failure substantially prejudiced one of the parties. This prejudice against AAFES manifested itself in three ways:

First, the district court's failure to provide adequate notice misled AAFES as to which claims were actually before the special master and as to the perimeters of his authority. It was reasonable for AAFES to conclude that Parks v. Perry had been suspended pending the resolution of similar claims and issues in the present contempt action.[4] As a result of this confusion, AAFES

special master. That order, however, specifically and explicitly confines the authority of the special master to consider the "Motion to Hold Defendants in Contempt." Indeed, nothing in that order, which was never amended, grants the special master the additional authority to hear the claims from Parks v. Perry.

[4]Parks takes issue with AAFES' assertion that it reasonably misunderstood the district court's consolidation and referral here. She claims that AAFES is simply trying to get another bite at the apple when it lost the first time around. However, we see nothing in the record to indicate that AAFES ever wavered in its belief regarding the nature of this contempt proceeding. Indeed, AAFES repeatedly reminded the special master that this was a contempt proceeding, not a Title VII action; that the special master lacked jurisdiction over Parks discrimination claims in this contempt proceeding because the judgment alleged to have been violated only enjoined retaliation and not discrimination; and that the proper standard of proof in this contempt proceeding was clear and convincing evidence. Moreover, the only evidence to which Parks can point as suggesting that AAFES understood that Parks v. Perry had been consolidated is unpersuasive. She notes that in June 1995, AAFES refused to pursue administratively the EEO complaints because the issues raised in those complaints were before the court in the pending contempt action. However, at the time AAFES took

12

did not pursue rights it would have had with respect to the <u>Parks v. Perry</u> Title VII action.[5]  The most obvious of these was its right to request a jury trial on the <u>Parks v. Perry</u> claims -- a right whose exercise it was denied by the district court's failure to adequately inform it that <u>Parks v. Perry</u> had been consolidated.[6]

Second, the effect of the district court's failure to delineate the claims before the special master carried over into the special master's report as well; indeed, at times, he seemed to have been confused regarding the scope of the task before him. This confusion resulted in the failure of the special master to

---

that position, <u>Parks v. Perry</u> had yet to be filed. (It was filed two months later, in August 1995).  Thus, this position is not indicative of AAFES' awareness that <u>Parks v. Perry</u> had been consolidated with the contempt action.

[5]For this reason, we also reject Parks's argument that AAFES cannot complain on appeal about the district court's consolidation and referral of <u>Parks v. Perry</u> when it did not object "at the time of consolidation and referral."  AAFES did not object precisely because it was unaware that the case had been consolidated and referred; indeed, there was no consolidation and referral.  As we noted earlier, from the beginning of this case until its closing arguments to the special master, AAFES continued to treat this case as a contempt proceeding and consistently reminded the special master of that fact.  And although it is true that this precise objection was not raised to the district court after the master had presented his report, it was raised immediately after in the first appeal to this court and, therefore, was before the district judge when he made his ruling that is the subject of this appeal.

[6]In a Title VII action, if a complaining party seeks compensatory or punitive damages -- as Parks clearly sought in her <u>Parks v. Perry</u> complaint here -- "any party may demand a trial by jury."  42 U.S.C. § 1981a(c).  Because the district court did not adequately notify AAFES that <u>Parks v. Perry</u> had been consolidated with the present contempt action, AAFES understandably saw no reason to invoke this right and thus did not.

13

distinguish between the two types of claims before him and caused him to apply an incorrect legal standard. Specifically, while his report states that Parks v. Perry was "transferred to this court," it proceeds generally to analyze the claims as though they were part of the same suit, seldom acknowledging which claims were part of which action and why. The Supreme Court and this court, however, have stressed frequently the importance of not intermingling consolidated claims in this fashion. See, e.g., Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496-97 (1933) ("[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties."); Frazier v. Garrison I.S.D., 980 F.2d 1514, 1532 (5th Cir. 1993) ("[A]ctions maintain their separate identity even if consolidated."); McKenzie v. U.S., 678 F.2d 571, 574 (5th Cir. 1982) ("[C]onsolidation does not cause one civil action to emerge from two.") Instead, courts have emphasized that following consolidation, it is vital that "the two suits retain their separate identities" even to the point that each requires "the entry of a separate judgment." Miller v. U.S. Postal Service, 729 F.2d 1033, 1036 (5th Cir. 1984). This strict segregation of merged cases is necessary to prevent consolidation from "depriv[ing] a party of any substantial rights that he may have had if the actions had proceeded separately." Id.

The failure properly to segregate the two actions in this case had precisely this effect. By failing to maintain the cases'

14

separate identities, the special master often blurred, or blended, the distinctive legal differences between a contempt proceeding and a Title VII action. The most notable example of this error concerns the standard of proof the special master applied to claims of retaliation raised by Parks in her original contempt motion.[7] Because these were contempt action claims, Parks should have been required to prove them by clear and convincing evidence. See, e.g., U.S. v. City of Jackson, Miss., 359 F.3d 727, 731 (5th Cir. 2004). Instead, however, the special master seems to have applied Title VII's preponderance of the evidence standard[8] to these contempt action claims that were not part of the Parks v. Perry suit.[9] AAFES was thereby deprived of "substantial rights that [it

---

[7]Both the contempt motion and Parks v. Perry contained allegations of retaliation. However, the special master based his finding of retaliation on his conclusion that AAFES had retaliated against Parks for her filing of the contempt motion and the EEO complaints, neither of which were among the claims listed in the Parks v. Perry complaint. Accordingly, they necessarily would have to have been part of the contempt action, which sought to hold AAFES in contempt for violating the more general anti-retaliation portion of the 1988 Shafer judgment. (That judgment had enjoined AAFES from "any form of retaliation" against Parks.)

[8]Under Title VII, a plaintiff prevails by demonstrating a defendant violated the statute by a preponderance of the evidence. See, e.g., Desert Palace, Inc. v. Costa, 539 U.S. 90, 99 (2003)

[9]The special master concluded that the evidence "suggested" that AAFES was guilty of retaliating against Parks for filing the contempt motion and the EEO complaints. This lenient standard of proof is inconsistent with the clear and convincing standard, which requires evidence "so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy." Travelhost, Inc. v. Blandford, 68 F.3d 958, 961 (5th Cir. 1995) (internal quotation marks omitted).

15

would] have had if the actions had proceeded separately." Miller, 729 F.2d at 1036.

Finally, the district court's failure adequately to notify AAFES that it had consolidated Parks v. Perry and referred it to the special master deprived AAFES of its right under the federal rules to receive notice of and object to the referral of matters to a special master. Rule 53 permits the district court to expand the initial mandate of the special master, but only by amending the referral order and "giving notice to the parties and an opportunity to be heard." Fed. R. Civ. P. 53(b)(4). None of these procedures were followed here, however; not only was the original referral not amended but the district court never notified the parties of its purported referral of Parks v. Perry to the special master, and obviously there was never an opportunity to respond.[10]

Thus, for the foregoing reasons, we conclude that the district court's failure to comply with the formal requirements of the federal rules directly produced a series of material errors in this case. AAFES was never put on notice that Parks v. Perry had been consolidated and referred and it adopted the reasonable belief that

---

[10]All of these factors are quite aside from compelling questions raised by the government at oral argument regarding whether an Article III judge has the authority or power to nonconsensually refer an individual Title VII claim to a non-Article III special master for a full report and recommendation -- effectively, a trial on the merits from beginning to end. Because we reverse on other grounds, it is unnecessary for us to address this issue. We note, however, that we see no reason that Parks v. Perry, if litigated, should not be tried by a district court without assistance from a special master.

16

it had not.  As we have indicated, following this reasonable belief deprived AAFES of substantial rights it would have had if the district court had adhered to the proper procedures.  We therefore REVERSE the district court's judgment on those claims raised in the Parks v. Perry action.  Specifically, we reverse the district court's judgment that AAFES had discriminated against Parks by selecting McFarland for the open UA15 position.[11]

                                    III

     Having concluded that the district court erroneously adopted the special master's finding that AAFES had discriminated against Parks, we have reversed that aspect of the district court judgment.  However, four other separate elements of that judgment still remain.  These elements include the district court's adoption of the following findings and recommendations of the special master: (1) that AAFES had retaliated against Parks for filing the contempt motion and EEO complaints, entitling her to compensatory damages; (2) that this retaliation led to her constructive discharge, entitling Parks to compensatory damages, back pay, front pay, and related benefits; (3) that AAFES be fined $10,000 for failing to update Parks' personnel records pursuant to the Shafer judgment;

---

[11]Of the five basic findings and recommendations made by the special master in his report and then adopted by the district court, only this one arises out of the Parks v. Perry suit.  Accordingly, this is the only specific element of the district court's judgment affected by our conclusion that Parks v. Perry was not properly before the special master.

17

and (4) that AAFES submit to an outside audit of its personnel policies.

We will examine each of these elements in turn. However, before doing so, we must note that a necessary correlate to our conclusion that Parks v. Perry was not before the special master is that the case before us is fundamentally a contempt action. It is in this context -- the context of a contempt action -- that our examination of these remaining elements will proceed.

A

First, the special master found that AAFES was in contempt of the court's order in Shafer, because it had retaliated against Parks by manipulating her performance evaluations, thereby effectively ensuring she would never be promoted. He concluded that Parks was thus entitled to $52,000 in compensatory damages. This recommendation was adopted with little comment by the district court.

To establish civil contempt, the moving party bears the burden of proving by "clear and convincing" evidence that the alleged contemnor was aware of and violated a "definite and specific order requiring him to perform or refrain from performing a particular act or acts." Travelhost, 68 F.3d at 961. Clear and convincing evidence is "that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to

18

a clear conviction, without hesitancy, of the truth of the precise facts' of the case." In re Medrano, 956 F.2d 101, 102 (5th Cir.1992) (quoting Cruzan by Cruzan v. Director, Missouri Dept. of Health, 497 U.S. 261, 285 n.11 (1990)).

Ordinarily, we would review the district court's factual findings for clear error. Travelhost, 68 F.3d at 961. However, because, as indicated above, the special master -- and by extension, the district court -- applied the wrong standard of review to Parks's retaliation claims, we review the district court's factual findings de novo. See Medrano, 956 F.2d at 102 (holding that when a district court bases its findings of fact upon an erroneous legal standard the appellate court reviews the record de novo).

The special master and the parties have assumed that the law of retaliation under Title VII provides guidance in determining whether AAFES retaliated against Parks within the meaning of the 1988 judgment. Under Title VII law, a retaliation claim requires proof that (1) the employee engaged in protected EEO activity, (2) the employee suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. See, e.g., Mattern v. Eastman Kodak Co., 104 F.3d 702, 705 (5th Cir. 1997). The special master concluded that the evidence before him was sufficient to establish each of these elements. Having reviewed the record ourselves de

19

*novo,* however, we conclude Parks failed to establish this third element by clear and convincing evidence.

The employer conduct providing the basis for the special master's conclusion that AAFES unlawfully had retaliated against Parks was a series of formal reprimands issued to Parks by her immediate supervisor, Tom Saga. These reprimands began in April 1994 and were issued on multiple occasions and for a variety of reasons, including taking excessively long lunches without permission, applying her makeup at her desk during working hours, and sleeping at her desk during working hours. Ultimately, these reprimands and the underlying behavior culminated in Saga assigning Parks a mediocre performance rating in her yearly 1995 review, which had a negative impact on her prospects for promotion.

At trial, Parks apparently did not take specific issue with AAFES' contention that she engaged in these various types of behavior; instead she contended that Saga used her behavior as a pretext for his retaliatory intentions. Accordingly, she presented evidence that she had been singled out and was reprimanded for conduct that other similarly-situated employees were not.

The weak link in Parks's case, however, is that she offered little evidence of a causal link between these reprimands and any protected activity. Not only did she fail to provide evidence of animus on the part of Saga, she failed to produce any evidence that, at the time Saga was alleged to have begun his "systematic

20

harassment and retaliation campaign," he was aware that Parks had filed any EEO claims or her <u>Shafer</u> contempt motion; indeed, the only evidence directly on this point shows that Saga did not become aware of these facts until September 1994.[12]  After September 1994, the evidence does not show any significant change in either the attitude or the disciplinary conduct of Saga towards Parks.  To be sure, there was only one more -- in November, when Parks had again taken an extended lunch without first receiving permission. Moreover, despite the fact that Saga's ultimate decision several months later to assign Parks a mediocre performance rating in her annual review occurred <u>after</u> he had been made aware of her EEO filings, that decision appears to be based in large part on the disciplinary record Parks had compiled <u>prior</u> to the time that Saga became aware of her protected activities.  While such slight evidence of a causal connection might arguably have some weight under a preponderance of the evidence standard, we have no hesitancy in concluding that such evidence is not so "clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy" that a causal connection exists between Saga's reprimands and Parks's protected activities. <u>Medrano</u>, 956 F.2d at 102.  In this contempt proceeding, we therefore conclude that the special master's finding that AAFES

_____

[12] Although Saga knew about Parks's participation in the <u>Shafer</u> case years earlier, the special master recognized that this alleged campaign of retaliation, which began in 1994, could not be connected to activities that concluded some six years earlier.

21

retaliated against Parks is unsupported by sufficient evidence and REVERSE and RENDER. We similarly REVERSE and RENDER with respect to the special master's corresponding conclusion that Parks was constructively discharged.[13]

B

Next, the special master found that AAFES was in contempt of court for failing to update its personnel records, and recommended that Parks be awarded $10,000 as "costs." This recommendation was adopted without comment by the district court. AAFES contends that this award is an improper criminal contempt sanction and must be voided. We agree.

As AAFES notes, a civil contempt fine must be either compensatory or coercive. International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 829 (1994); see also American Airlines, Inc. v. Allied Pilots Ass'n, 228 F.3d 574, 585 (5th Cir. 2000). This fine is neither. It is not coercive because it does not provide AAFES with the "opportunity to purge," i.e., a "subsequent opportunity to reduce or avoid the fine through

---

[13]To prove constructive discharge, "a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 319 (5th Cir. 1997). The master's finding that AAFES had subjected Parks to a campaign of retaliation formed the basis for his conclusion that Parks's working conditions were intolerable, and thus, that she had been constructively discharged. As we have concluded that there is not clear and convincing evidence to support a finding of retaliation, there is no longer a basis for concluding that Parks had been constructively discharged.

compliance." Bagwell, 512 U.S. at 829. It is not compensatory because it is not based on any evidence of loss. The special master explicitly found that Parks failed to prove she was damaged by her unamended personnel records. Moreover, despite the special master's characterization of the fine as costs, it cannot refer to Parks's attorneys' fees, which had been allowed separately. Thus, because the fine is not compensatory or coercive, it amounts to a punitive, criminal sanction. Id. Pursuant to 42 U.S.C. § 2000h, however, criminal contempt fines arising from Title VII proceedings may not exceed $1,000. Furthermore, such criminal fines must be accompanied by the procedural protections available in ordinary criminal contempt proceedings, including a finding of criminal intent, proof beyond a reasonable doubt, and the right to a trial by jury. 42 U.S.C. § 2000h; see also Young v. United States ex rel. Vuitton, 481 U.S. 787, 798-99 (1987). The lack of such procedural protections, coupled with the fact that the fine here exceeded the statutory limit of $1000, requires that we REVERSE the district court's award of $10,000 to Parks.

C

Finally, "[i]n the light of [his] findings and recommendations . . . regarding the employment practices of AAFES," the special master recommended that an outside agency be appointed to conduct a study of AAFES' personnel policies. This recommendation was adopted without comment by the district court. AAFES contends that because Parks, who has departed AAFES in retirement, lacked

23

standing to seek this remedy, the district court lacked jurisdiction to enter an injunction requiring such an audit. We agree.

In Armstrong v. Turner Industries, Inc., 141 F.3d 554, 563-64 (5th Cir. 1998), we held that a plaintiff who has merely alleged a past statutory violation and does not assert any likelihood that she will be subjected to a similar violation in the future or purport to represent a specific class of individuals that is in danger of discrimination from the defendant lacks the standing to seek injunctive relief. Parks has acknowledged that her retirement from AAFES means that injunctive relief in this case would not benefit her in any way. In addition, we find nothing in her pleadings suggesting she is seeking such injunctive relief on behalf of a specific class of individuals in danger of continued discrimination by AAFES. Indeed, such class-wide injunctive relief was never even requested by Parks in this case but was recommended sua sponte by the special master. Accordingly, we find that Parks lacks standing to seek any injunctive relief and therefore REVERSE the district court's order that AAFES be audited by an outside agency.

IV

One final portion of the district court's judgment in this case needs to be addressed. The district court concluded that Parks was the prevailing party in this case, awarding her over

24

$400,000 in attorneys' fees.  However, given our complete reversal of the district court's judgment in this case, it is clear that Parks is no longer a prevailing party.  Accordingly, the district court's award of attorneys' fees is also REVERSED.  42 U.S.C. § 2000e-5(k).

CONCLUSION

The judgment entered by the district court in this case adopted the following findings and recommendations of the special master in their entirety: (1) that AAFES had discriminated against Parks in the selection of McFarland for the UA15 Change Management position, entitling Parks to compensatory relief, back pay and increased retirement benefits; (2) that AAFES retaliated against Parks for filing EEO complaints and the Shafer contempt motion, entitling Parks to $52,000 in compensatory damages; (3) that Parks was constructively discharged, entitling Parks front pay, back pay and related increased benefits; (4) that AAFES was in contempt of court for failing to update all of its personnel records, entitling Parks to $10,000; and (5) that AAFES should have its personnel policies reviewed by an outside agency.  The district court also awarded Parks attorneys' fees.

Today, we reverse the district court's judgment in its entirety.  We have concluded that the district court's adoption of the special master's findings regarding the discrimination claims made in Parks v. Perry was erroneous as this case was not properly

25

before the master.[14] We have concluded that the special master's finding that AAFES retaliated against Parks and constructively discharged her, thereby placing it in contempt of an earlier order of this court, is unsupported by sufficiently clear and convincing evidence. We have rejected the district court's award of $10,000 and its injunction that AAFES submit to an independent audit on statutory and jurisdictional grounds. Finally, as Parks is no longer the prevailing party, we have concluded she is no longer entitled to attorneys' fees. Accordingly, the judgment of the district court is REVERSED, and judgment is RENDERED for AAFES.

REVERSED and RENDERED.

---

[14]We note that we dismiss these Parks v. Perry claims without prejudice. While Parks v. Perry has been administratively closed, Parks is free to petition the district court to reopen the case and litigate the claims raised therein. The remaining part of the judgment is dismissed with prejudice.

26