United States Court of Appeals,

Fifth Circuit.

No. 94-10997.

TRAVELHOST, INC., Plaintiff-Appellee,

v.

Carl L. BLANDFORD, et al., Defendants,

Karen Hoffman and Steve Bunyard, Non-party Appellants.

Nov. 15, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before HIGGINBOTHAM and PARKER, Circuit Judges, and McBRYDE[*], District Judge.

ROBERT M. PARKER, Circuit Judge:

Non-parties Karen Hoffman and Steve Bunyard appeal the district court's order holding them in contempt. The district court found that there was clear and convincing evidence that the non-parties participated in a scheme with defendant Blandford to violate an injunction order entered by the district court. Based on a review of the evidence admitted against the non-parties, we hold that the district court's finding was clearly erroneous and reverse the order of the district court holding Karen Hoffman and Steve Bunyard in contempt.

I. BACKGROUND

In September 1992, Travelhost filed a complaint and request for injunction against Carl Blandford and Richard Browning.

_____

[*]District Judge of the Northern District of Texas, sitting by designation.

1

Browning and Blandford had been associate publishers of the "Travelhost" magazine and distributed that magazine to hotels in the St. Louis, Missouri metropolitan area. The Travelhost Associate Publisher Agreement contained a covenant not to compete with Travelhost in the same market for a period of two years after termination of the relationship. Browning signed such a contract in 1973. Defendant Blandford succeeded to Browning's status as associate publisher in 1983. In 1992, Blandford defaulted on certain payments to Travelhost and was terminated as an associate publisher. Upon the termination of his relationship with Travelhost, Blandford began publishing and distributing "Passport", a magazine very similar to "Travelhost". As the publisher of "Passport", Blandford serviced many of the same hotels and advertisers he had serviced as Travelhost's associate publisher.

Travelhost filed suit seeking an injunction prohibiting Blandford and Browning from publishing "Passport" or any similar competitive magazine in the St. Louis metropolitan area for the term of the covenant not to compete. In January 1993, after a two-day evidentiary hearing, the district court granted Travelhost's application for preliminary injunction. The court ordered that Blandford, and any of his agents, or any person acting in concert with him, until April 30, 1994, cease and refrain from directly or indirectly: (1) distributing "Passport" or any similar magazine in the St. Louis metropolitan area; (2) operating any business that is similar to or competitive with Travelhost; (3) causing or soliciting another to print "Passport"; (4) printing

2

"Passport"; (5) soliciting advertisement for "Passport"; and (6) taking any action or making any representation that would lead another to believe that Blandford was in any way connected with Travelhost.

Blandford appealed the district court's order and obtained a stay of the injunction from this Court pending appeal. Blandford continued to publish and distribute "Passport" during the pendency of the appeal. On January 5, 1994, this Court affirmed the preliminary injunction and vacated the stay order.

On January 14, 1994, Blandford sold the assets of Passport Magazine to the non-parties, Karen Hoffman and Steve Bunyard. The Asset Transfer Agreement expressly included all art work, client lists, advertising contracts, invoices, stationary, files, and advertising revenue from the date of the transfer forward. The agreement also stated that Hoffman and Bunyard had full knowledge of the district court's preliminary injunction against Blandford, and that the agreement did not include Blandford's assistance or consulting in the operation of the magazine. Bunyard and Hoffman used the assets to publish "Passport" from February through June, 1994.

When Travelhost learned of the transfer of assets, it sought to modify the injunction to expressly include Bunyard and Hoffman. The district court denied this motion on April 13, 1994.[1] On April

---

[1] The district court stated, however, that it was not necessary to modify the injunction because it was already sufficient to bind assignees of Blandford. We need not address this aspect of the district court's ruling because Travelhost concedes that the contempt order against Bunyard and Hoffman

3

29, 1994, the district court extended the term of its injunction order until November 10, 1994. On July 14, 1994, Travelhost filed a motion for contempt seeking compensatory damages and attorneys' fees from defendant Blandford, and his wife and bookkeeper, Beverly McIntyre, as well as Bunyard, Hoffman, and others. The district court held a four-day hearing on Travelhost's motion for contempt beginning August 22, and on September 14, 1994 entered its contempt order.

The district court held that Blandford, McIntyre, Bunyard, and Hoffman were jointly and severally liable for Travelhost's damages and attorneys' fees for a total liability of $164,074.08. The district court specifically found that Bunyard and Hoffman participated with Blandford in a scheme to violate the district court's injunction. The district court also entered a judgment in favor of Travelhost on the underlying action against Blandford. Blandford and McIntyre did not appeal. Non-parties Bunyard and Hoffman timely filed the instant appeal.

## II. DISCUSSION

Courts possess the inherent authority to enforce their own injunctive decrees. *Waffenschmidt v. MacKay,* 763 F.2d 711, 716 (5th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 794, 88 L.Ed.2d 771 (1986). An injunction binds not only the parties subject thereto, but also non-parties who act with the enjoined party. *Id.* Rule 65(d) of the Federal Rules of Civil Procedure

could not be based solely on their status as Blandford's assignees or as the purchasers of Passport Magazine's assets.

4

provides that an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." As we've recognized previously, Rule 65(d)

> is derived from the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in "privity" with them, represented by them or subject to their control. In essence ... defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.

*Waffenschmidt,* 763 F.2d at 717 (quoting *Regal Knitwear Co. v. National Labor Relations Board,* 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945)).

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Securities and Exchange Commission v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 669 (5th Cir.1981). In a civil contempt proceeding, the movant bears the burden of establishing the elements of contempt by clear and convincing evidence. *Petroleos Mexicanos v. Crawford Enterprises, Inc.,* 826 F.2d 392, 401 (5th Cir.1987).

The clear and convincing evidence standard is higher than the "preponderance of the evidence" standard, common in civil cases, but not as high as "beyond a reasonable doubt." *United States v. Rizzo,* 539 F.2d 458, 465 (5th Cir.1976). In the context of a

proceeding for disbarment of an attorney, we held that clear and convincing evidence was "that weight of proof which "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case." *In re Medrano,* 956 F.2d 101, 102 (5th Cir.1992) (quoting *Cruzan by Cruzan v. Director, Missouri Dept. of Health,* 497 U.S. 261, 285 n. 11, 110 S.Ct. 2841, 2855 n. 11, 111 L.Ed.2d 224 (1990)). We are persuaded that the same definition of clear and convincing evidence should apply in the contempt context. We review an order of contempt for abuse of discretion, and we review the district court's underlying fact findings under the clearly erroneous standard of Federal Rule of Civil Procedure 52(a). *Federal Deposit Insurance Corporation v. LeGrand,* 43 F.3d 163, 166 (5th Cir.1995).

As a threshold matter, we address the non-parties' argument that the civil contempt order in the present case is a coercive order that is moot as a result of the final judgment entered in the underlying case between Blandford and Travelhost. Civil contempt can serve two purposes. It can be used to enforce compliance with a court's order through coercion, or it can be used to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct. *Petroleos,* 826 F.2d at 400. "If the civil contempt proceeding is coercive in nature, the general rule is that it is mooted when the proceeding out of which it arises is

6

terminated." *Id.* However, if the contempt order is compensatory in nature, it is not mooted by termination of the underlying action. Because the contempt order in the present case is intended to compensate Travelhost for lost profits and attorneys' fees resulting from the contemptuous conduct, it is clearly compensatory in nature. Therefore, the argument that the contempt order is moot must be rejected.

The non-parties also argue that the district court erred in finding that there was clear and convincing evidence that they participated in a scheme with Blandford to violate the court's injunction. There is no dispute in this case that the district court's injunction against Blandford was in effect at the time of the allegedly contemptuous conduct. Nor is there any dispute that the district court's injunction was sufficient to enjoin persons "in active concert or participation with" Blandford in activity in violation of the injunction. In addition, the non-parties concede, as they must, that they had notice of the injunction against Blandford prohibiting him from continuing in the publication of the magazine at the time of the Asset Transfer Agreement.[2] However, to prevail on its motion to hold non-parties Bunyard and Hoffman in contempt, Travelhost also had to establish by clear and convincing evidence that Bunyard and Hoffman did indeed act in concert with or

---

[2]The Asset Transfer Agreement signed by Blandford, Bunyard, and Hoffman on January 14, 1994 stated "[t]hat the Second Party [Bunyard and Hoffman] has full knowledge of the preliminary injunction granted by the United States District Court for the North District of Texas (Dallas Division) effective and relating to the First Party [Blandford] until April 30, 1994."

7

participate with Blandford in a scheme to allow Blandford to continue to publish Passport Magazine in violation of the injunction. The district court held that Travelhost met this burden. We disagree.

Travelhost contends that the district court's findings of fact regarding Bunyard and Hoffman are supported by evidence of the non-parties' acts in helping Blandford circumvent the district court's injunction through a "sham" sale of Passport Magazine's assets. Travelhost boldly argues that the fact that Bunyard and Hoffman purchased the assets of Passport Magazine and continued its publication even though they had notice that Blandford was enjoined from doing so is sufficient evidence of the alleged scheme. Travelhost also emphasizes the similarity of the magazine published by Bunyard and Hoffman and the magazine published by Blandford. However, these facts evidence nothing violative of the district court's injunction.

The district court's injunction, and the covenant not to compete on which it was based, prohibited only Carl Blandford, and persons acting with him, from publishing "Passport" or a similar competitive magazine. The injunction did not prohibit Blandford from selling assets he owned. In addition, it did not, and could not, prohibit other persons from publishing "Passport" unless they were persons acting with Blandford within the meaning of Rule 65(d). Evidence that Bunyard and Hoffman published "Passport" after January 14, 1994, therefore, means nothing without evidence that it was done in participation with Blandford.

8

Similarly, Travelhost argues that the non-parties' use of art boards, advertising contracts, and distribution lists provided by Blandford establishes that they were participating with him in circumventing the injunction. However, the record reflects that these items were assets transferred pursuant to the Asset Transfer Agreement. Use of such assets, even in the publication of a competitive magazine, by persons not participating with Blandford could not be in violation of a valid injunction entered by the district court. Thus, purchase and use of these assets means nothing by itself, and the relevant inquiry remains: whether there was evidence that Bunyard and Hoffman were participating with Blandford in the publication of Passport Magazine.

The non-parties contend that the purchase of Passport Magazine's assets from Blandford was an arms-length transaction, and that they in no way attempted to aid Blandford in circumventing the district court's injunction. Hoffman testified that sometime in early summer 1993 Blandford asked her in passing if she knew anyone who might be interested in buying Passport Magazine. She testified that she did not, and expressed no interest in buying it herself because she was working too many hours and wasn't in a financial position to do it. Hoffman testified that sometime later Blandford mentioned that he was talking to a couple of people about purchasing Passport Magazine.

Blandford testified that he spoke to other people about Passport before he approached Bunyard and Hoffman. Blandford testified that he talked to a person named Richard Harris about

9

buying Passport, but could not sell to him because Harris needed help in operating the publication, something Blandford could not offer under the district court's injunction. Blandford testified that he approached Bunyard because he had an outstanding trade balance with Bunyard and hoped to apply the assets of Passport to that balance. Blandford testified that he first approached Bunyard about purchasing Passport in December 1993.

Bunyard testified that when he was approached by Blandford he spoke to Hoffman about the purchase because he thought it would work well with her barter business. The record also reflects that Hoffman had publishing experience. They agreed that Bunyard would provide the necessary financial support and Hoffman would handle the magazine's daily operations. Both Bunyard and Hoffman admit candidly that before purchasing the assets of Passport Magazine, Blandford advised them that he was prohibited by court order from publishing Passport Magazine.

Bunyard, a successful businessman, testified that he had no interest in purchasing Blandford's business in its entirety because he did not want to get tangled-up in any liabilities Blandford might have incurred. Thus, Blandford testified, he was interested only in a purchase of assets. Bunyard, Hoffman, and Blandford all testified that the first purchase agreement Blandford drafted was not signed because it included a provision for the assumption of printing liabilities Blandford had incurred. The transaction was consummated only after Blandford drafted an asset transfer agreement that did not include that provision. Bunyard, Hoffman,

10

and Blandford also testified that the consideration for the transfer was forgiveness of $9300.00 in debt to Bunyard and $1000.00 in trade credits from a company owned by Hoffman.

Blandford testified that under the agreement, he sold Bunyard and Hoffman the assets of Passport Magazine, including the art work, art boards, client lists, distribution lists, advertising contracts, pre-printed invoices, computer billing software, and stationary. He also testified that he offered no training or support to Bunyard and Hoffman in the transfer because he was restrained by the district court's injunction. Blandford, Bunyard, and Hoffman each testified that following the transfer of assets on January 14, 1994, Blandford had no involvement in the publication of the magazine.

Travelhost argues, however, that Blandford continued to be involved in the operation of Passport Magazine, directly and indirectly, even after the sale of assets to Bunyard and Hoffman. This contention, if supported in the record, would be sufficient to support the district court's finding that the non-parties were participating with the defendant in a scheme to circumvent the injunction.

In support of its position, Travelhost argues first that Bunyard and Hoffman continued to use Blandford's address for the business after January 1994, and that they did not attempt to change the business address until April 29, 1994 after the district court extended the injunction. In support of this argument, Travelhost points to invoices introduced in evidence. During Karen

11

Hoffman's testimony, Travelhost introduced invoices which Hoffman had provided to Travelhost at her deposition.  Hoffman testified that these documents were copies of the statements she sent to advertisers.  She admitted that Blandford's business address was imprinted on them, but testified that correct address labels were placed on the copies sent to advertisers.  In addition, Hoffman testified, envelopes with the correct return address were provided to advertisers with their statements.  There was no need, according to Hoffman, to place correct address labels on the copies of the pre-printed invoices retained for her internal files.[3]

Travelhost also points to copies of the return portion of certain invoices returned to Passport Magazine with payment for advertising.[4]  Travelhost claims that these documents are significant because they show that Hoffman was using address labels to correct the business address only after the district court extended the injunction on April 29, 1994.  However, at most, these documents show that Hoffman was somewhat inconsistent in using address labels on the return portion of the invoices sent to advertisers.  An invoice dated April 30, 1994, to Hal Lowrie Enterprises reflects a correct address label;  invoices of the same date to Executive Salon and L.G.T. Advertising do not.  Invoices dated May 31, 1994 to Executive Salon and L.G.T. Advertising reflect correct address labels;  an invoice of the same date to Hal

---

[3]The district court noted this testimony and admitted these invoices, Supp.Rec., Pl.Ex. 9, for all purposes *except* to show the return address used for billings.

[4]Supp.Rec., Pl.Ex. 16.

Lowrie Enterprises does not.

Travelhost also emphasizes the fact that after the transfer of assets, Blandford continued to receive mail and remittances for Passport Magazine at his address. Hoffman admitted that some mail continued to go to Blandford's address, but testified that Blandford always delivered such mail to her. Blandford testified also that he received mail at his address after the transfer of assets. This was a result, Blandford testified, of certain advertisers failing to correct the mailing address for Passport Magazine in their computers. Blandford explained that the checks he received were computer generated checks that were sent in window-type envelopes. Indeed, the documents introduced by Travelhost show that a check to Passport Magazine from Hal Lowrie Enterprises dated May 17, 1994 was printed with Blandford's address even though the portion of the invoice returned with the payment reflected the new business address.[5] It was Blandford's testimony that the misdirected checks were turned over to Karen Hoffman. Although Travelhost contends that certain monies were retained by Blandford as a result of this "scheme", there is no evidence in the record that supports this contention.

Travelhost also argues that Beverly McIntyre's efforts in transferring the computer billing program to Hoffman's computer after January 1994 evidence Blandford's continued involvement in the operations of the magazine. Hoffman admitted that McIntyre had assisted her in loading Passport Magazine's computer billing

_____

[5]Supp.Rec., Pl.Ex. 16.

13

software onto her computer. Hoffman and McIntyre both testified that they believed the computer program to be one of the assets transferred under the Asset Transfer Agreement. McIntyre, Blandford's wife, testified that she had handled the billing for Blandford's Passport Magazine. She testified that because she was the only person familiar with the billing program, she was the only person able to assist Hoffman. McIntyre also testified that because of difficulty in making the program work on Hoffman's computer, she assisted Hoffman with the program in February, March, and April. McIntyre also admitted to reprinting the January billing for Hoffman so that Hoffman would have copies of the most recent records.

McIntyre testified that her assistance was done merely as a favor to Karen Hoffman, and not because of any obligation or agreement. Blandford testified that he was not aware of the problems Hoffman was having with the computer billing program or his wife's efforts in transferring the program. Her assistance, he testified, was not at his direction. Hoffman and McIntyre both testified that McIntyre was not involved in the operations of Passport Magazine after January 14, 1994 other than her assistance with the computer billing software.

The testimony of Blandford, McIntyre, Bunyard, and Hoffman regarding these circumstances consistently reflects an arms-length transaction and a legitimate transfer of assets rather than the conspiracy Travelhost alleges. Travelhost points out, correctly, that the district court was free to disbelieve or discredit this

14

testimony.[6]  We recognize the deference appropriate in review of a district court's credibility determination.  Fed.R.Civ.P. 52(a).  However, disbelief of a witness's testimony is not sufficient to carry a plaintiff's burden or support the district court's finding to the contrary.  *Waffenschmidt,* 763 F.2d at 724 (citing *Nishikawa v. Dulles,* 356 U.S. 129, 137, 78 S.Ct. 612, 617, 2 L.Ed.2d 659 (1958)).  The plaintiff "must still prove that [the nonparty] respondents aided or abetted [Blandford] through clear and convincing evidence."  *Id.*

The only other evidence Travelhost cites is the deposition testimony of Constance McCord.  McCord was an employee of Carl Blandford from December 1992 to August 1993.  McCord testified that while she worked for Blandford, he told her about the injunction and told her to conduct business as usual.  She also testified that Blandford indicated to her that there might come a time when someone else would have to be the acting head of Passport Magazine, but that he would still be involved.  The only evidence in the record regarding Blandford's discussions with Bunyard and Hoffman is that Blandford did not approach them about purchasing Passport Magazine until December of 1993, months after Constance McCord left his employ.  McCord's testimony, although certainly relevant on the question of Blandford's intentions in early 1993, offers very little support of the district court's finding regarding the actions of Bunyard and Hoffman.

---

[6]In fact, the district court expressly discredited Blandford's testimony because it found him not to be a credible witness.

Finally, Travelhost contends that the lack of evidence that Blandford was ever paid the consideration recited in the Asset Transfer Agreement shows that the agreement was a sham. Travelhost does not manage to establish that there was in fact no consideration; it argues merely that there is no proof any consideration was actually paid. This argument cannot prevail because it attempts to place the burden of producing such evidence on the non-parties. It was Travelhost's burden in seeking a contempt order to introduce any evidence it wanted to make a part of the record. It cannot now rely on a lack of evidence to support the district court's order.

We are aware that in reviewing for clear error, we are to construe the evidence in a light most favorable to upholding the district court's finding. *Waffenschmidt,* 763 F.2d at 714. However, viewed even in that deferential light, the evidence of record cannot adequately support the order of contempt against appellants. Therefore, we hold that the finding of the district court that Travelhost showed by clear and convincing evidence that Bunyard and Hoffman participated with Carl Blandford in a scheme to violate the district court's injunction is clearly erroneous.

### III. CONCLUSION

For the reasons given above, the order of the district court holding the non-parties Karen Hoffman and Steven Bunyard in contempt is **REVERSED.**

16