IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 29, 2009

Charles R. Fulbruge III
Clerk

No. 08-10174

LOIS WHITCRAFT; PHILLIP W. OFFILL, JR.

Appellants

v.

WILLIAM D. BROWN

Appellee

Appeals from the United States District Court
for the Northern District of Texas

Before KING, BENAVIDES, and CLEMENT, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

Lois Whitcraft and Phillip Offill appeal from a civil contempt order issued by the district court in the underlying proceeding. We affirm in part and vacate in part the district court's contempt order.

I.

On July 2, 2007, the Securities and Exchange Commission ("SEC") sued certain individual and entities, including Jeffrey Bruteyn, son of Appellant Whitcraft and client of Appellant Offill, an attorney, for securities fraud. The SEC also joined two other corporations partially owned or controlled by Bruteyn as relief defendants: American Eagle Acceptance Corporation ("American Eagle") and Hess Financial Corporation ("Hess Financial"). The same day, the district

court issued a temporary restraining order freezing Bruteyn's assets ("freeze order"). The freeze order provided in pertinent part that:

> Defendant and Relief Defendants, their officers, agents, employees, servants, attorneys and all persons in active concert or participation with them, who receive actual notice of this order by personal service or otherwise, are restrained and enjoined from, directly or indirectly, making any payment or expenditure of funds . . . and from assigning[,] conveying, transferring, encumbering, disbursing, dissipating, selling, hypothecating, or concealing any assets, monies, or other property owned by or in the actual or constructive possession of defendants or Relief Defendants.

*SEC v. Amerifirst Funding, Inc.*, 2008 WL 282275, *1 (N.D. Tex. February 1, 2008). The court also filed an order appointing William D. Brown as temporary receiver, and granting him exclusive jurisdiction over all assets of the named defendants and relief defendants ("receivership order"). In relevant part, the receivership order directs:

> [a]ll persons, including defendants and Relief Defendants, and their officers, agents, servants, employees, brokers, facilitators, attorneys, and all persons in active concert or participation with them who receive actual notice of [the] order by personal service or otherwise [to] . . . promptly deliver to the Receiver all Receivership Assets in the possession or under the control of any one or more of them[.] No separate subpoena shall be required.

*Id*.

On July 5, 2007, Bruteyn and several of his business associates and personal friends met at the office of Offill, Bruteyn's lawyer, to discuss how Bruteyn would access funds for his living expenses and legal fees. Prior to this meeting, Bruteyn had directed United Financial Markets, Inc. ("United Financial") to obtain stock in InterFinancial Holding Corp. ("InterFinancial") and distribute 95% of the proceeds from the resale of this stock to Hess Financial, a company owned and managed by Bruteyn.

At the time of the meeting, United Financial's account contained some $495,000 in profits from the sale of InterFinancial stock and still owed Hess over $430,000 as stipulated under the purchase agreement. United Financial had not yet been named a defendant or a relief defendant at the time of the meeting. Bruteyn suggested that the money in United Financial's account be transferred to Hess Financial and be made available for his expenses. Offill informed Bruteyn that, because Hess Financial was subject to the freeze order, such a maneuver would violate the order.

Bruteyn then proposed selling a Picasso[1] painting hanging in his bedroom to United Financial in exchange for $500,000. Offill initially expressed concern that the Picasso was covered by the freeze order but eventually opined that the transaction would be legal as Bruteyn maintained that the painting was owned by his mother, Lois Whitcraft ("Whitcraft"). Bruteyn phoned his mother and obtained her permission to sell the painting. That same day, United Financial purchased the Picasso for $431,161. The money was wired into Whitcraft's account and placed at Bruteyn's disposal.

On July 25, 2007, the SEC amended its complaint to include five additional relief defendants, including United Financial and InterFinancial. The receivership order and the freeze order were subsequently amended to include these additional relief defendants.

On September 24, 2007, the receiver and the SEC filed a motion to show cause seeking to hold Bruteyn, Whitcraft, Ronald Whitcraft (Bruteyn's stepfather), and Offill in civil contempt for violating the

---

[1] Evidence developed at the district court hearing established that the Picasso was not an original, but rather a reproduction print of relatively modest value. Lois Whitcraft maintained that she believed the Picasso was authentic.

receivership and freeze order through the transaction engineered on July 5, 2007.[2] The district court held an evidentiary hearing on the civil contempt motion in January 2008. The court heard expert testimony from an art dealer regarding the nominal value of the Picasso print, testimony from the purported contemnors, and testimony from financial experts with respect to the economic viability and structure of the corporations involved in the transaction. Following the evidentiary hearing, on February 1, 2008, the district court found Bruteyn, Whitcraft, and Offill in contempt. The court held that there was clear and convincing evidence that Whitcraft and Offill knowingly aided and abetted Bruteyn in violating the freeze order. The district court declined to hold Bruteyn's stepfather in contempt. Whitcraft and Offill alone appeal.[3]

## II.

We review contempt orders and sanctions imposed thereunder for an abuse of discretion. *United States v. City of Jackson*, 359 F.3d 727, 731 (5th Cir. 2004) (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000)). We review the district court's underlying findings of fact for clear error and its underlying conclusions of law de novo. *Id.*

As the district court noted, "[a] movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Martin v.*

---

[2] The receiver further asserted a fraudulent transfer claim and maintained that the sale violated the Texas Uniform Fraudulent Transfer Act ("TUFTA"). Because the court reached its finding without resorting to TUFTA, it did not address the parties' TUFTA arguments or whether TUFTA can be used to set aside a fraudulent transfer in a contempt proceeding.

[3] The SEC and the receiver were both parties to the contempt action, but the SEC sought to hold only Bruteyn in contempt. Because Bruteyn does not challenge the contempt ruling against him, the SEC is not a party to this appeal.

*Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). A court order binds not only the parties subject thereto, but also non-parties who act with the enjoined party. *See NLRB v. Laborers' Int'l Union of N. Am., AFL-CIO*, 882 F.2d 949, 954 (5th Cir. 1989) ("[A]ny party who knowingly aids, abets, or conspires with another to evade an injunction or order of a court is also in contempt of that court."); *Waffenschmidt v. MacKay*, 763 F.2d 711, 726 (5th Cir. 1985) (citing *Ex Parte Lennon*, 166 U.S. 548, 555 (1897)); *see also* Fed. R. Civ. P. 65(d)(2) (stating that every injunction and restraining order "binds . . . the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)"). Although good faith is not a defense to a civil contempt order, good faith is relevant to whether a non-party knowingly aided or abetted another in violating a court order. *Waffenschmidt*, 763 F.2d at 726.

### III.

The district court held that Offill had violated the freeze order, which prohibited Bruteyn (and his officers, agents, servants, employees, and attorneys or other persons who were in active concert or participation with him) from "directly or indirectly[] making any payment or expenditure of funds" and "from assigning[,] conveying, transferring, encumbering, disbursing, dissipating, selling, hypothecating, or concealing any assets, monies, or other property owned by or in the actual or constructive possession" of Bruteyn or the relief defendants. Offill challenges the district court's holding that the receiver proved by "clear and convincing evidence" that (1) that a court order was in effect, (2) that the order required certain conduct by Offill, and (3) that the Offill failed to comply with the court's order.

The district court did not abuse its discretion in finding Offill in civil contempt. As to the first element of contempt, the parties do not dispute that

at the time the Picasso was sold to United Financial on July 5, 2007, the freeze order was in effect. As to the second element, the order, by its terms, required certain conduct by Offill, who was Bruteyn's lawyer at the time of the transaction. The freeze order clearly states that it binds persons who "receive actual notice of this order by personal service or otherwise" including the defendant Bruteyn's "attorneys." On July 3, 2007, Offill accepted service of the SEC's complaint, which included the freeze order, on behalf of Bruteyn. Offill therefore had actual notice of the freeze order. Beyond being bound by the order by virtue of his role as Bruteyn's attorney, the district court also found that Offill was also a person in "active concert or participation" with Bruteyn. Offill—with full knowledge of the freeze order's terms—was an active participant in discussions about how to get funds to Bruteyn, approved of the sale of the Picasso, and Offill's office served as the place to consummate the sale. The final element of civil contempt— that the respondent failed to comply with the freeze order—was also satisfied. Offill failed to comply with court order by assisting Bruteyn in conveying and transferring "assets" and "monies" that were in Bruteyn's "actual or constructive possession." The Picasso was in Bruteyn's actual possession at the time of the sale—it hung in his bedroom in the home he used as his residence.[4] Thus, the Picasso was an asset in the actual possession of Bruteyn, and was prohibited from being transferred under the freeze order. Offill's actions facilitating the sale of the Picasso "aided or abetted [Bruteyn] . . . with knowledge that [Bruteyn] was violating the court's orders."

---

[4] The home was owned by Bruteyn's stepfather, who visited the home a few times a year with Whitcraft.

*Waffenschmidt*, 763 F.2d at 726.[5] The district court did not abuse its discretion in holding Offill in contempt of the freeze order.

As to Whitcraft, pursuant to her own testimony, the district court found that she "admit[ted] that she was aware of the Freeze Order before the July 5, 2007 sale of the Picasso." *Amerifirst Funding*, 2008 WL 282275 at *12. Whitcraft testified that she was aware of the "existence" of the freeze order because, immediately before asking for her permission to sell the Picasso, Bruteyn told her that his accounts were closed. She specifically testified that "[Bruteyn] called and said that the SEC had closed his accounts and he needed a defense attorney and would I consider selling the Picasso, and he wanted to borrow some money for his defense." There is no evidence that she knew that items in Bruteyn's constructive or actual possession were prohibited from being transferred or that she was aware of the other specific terms of the order.[6] Whitcraft also testified that she believed she owned the Picasso and had no reason to believe that the Picasso was anything but authentic. Given the lack of evidence that Whitcraft was aware of the details of the freeze order, she cannot be charged with knowledge that assets she believed to be hers were covered by the order. Under the specific circumstances presented here, we hold that the district court abused its discretion in finding that Whitcraft knowingly aided and abetted Bruteyn in

---

[5] In addition we hold that the district court did not err in finding that the funds held in United Financial's account which were used to purchase the Picasso were in the constructive possession of Bruteyn, thus providing an alternative theory for why the sale of the Picasso was a violation of the freeze order. Under Texas law, constructive possession requires "intent and capability to maintain control and dominion" over the object in question. *Mehan v. Wamco XXVIII, Ltd.*, 138 S.W.3d 415, 418 (Tex. App. 2004). Because Bruteyn exercised control over the funds used to purchase the Picasso and was able to authorize their use in purchasing the Picasso, this "disburs[ment]" of "monies" in Bruteyn's "constructive possession" was a further violation of the freeze order.

[6] The district court did not hold, nor does the receiver contend, that Whitcraft was aware of the specifics of the freeze order or knew the freeze order applied to assets which were not owned by Bruteyn.

violating the court's order. Although Whitcraft should not be held in civil contempt, our holding does not infringe upon the district court's authority to ensure the return of receivership assets through other means, including enforcement of the aforementioned receivership order.

## IV.

For the foregoing reasons, the district court's order holding Offill and Whitcraft in civil contempt is AFFIRMED IN PART with regard to Phillip Offill, and VACATED IN PART and REMANDED for further proceedings not inconsistent with this opinion with regard to Lois Whitcraft.