# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 17, 2013

Lyle W. Cayce
Clerk

No. 12-30860

OAKS OF MID CITY RESIDENT COUNCIL,

Plaintiff - Appellee

v.

KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services; MARILYN TAVENNER, Acting Administrator of the Centers for Medicare and Medicaid Services,

Defendants - Appellants

_____

D & W HEALTH SERVICES, INCORPORATED, doing business as The Oaks of Mid City Nursing and Rehabilitation Center

v.

KATHLEEN SEBELIUS, In Her Capacity as Secretary of the United States Department of Health and Human Services; MARILYN TAVENNER, Acting in Her Capacity as the Administrator of the Centers for Medicare and Medicaid Services,

Defendants - Appellants

Appeal from the United States District Court
for the Middle District of Louisiana

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.
PATRICK E. HIGGINBOTHAM, Circuit Judge:

No. 12-30860

The government sought to terminate Oaks, a nursing facility, from the Medicare program. It sent Oaks a Notice of Termination. The district court enjoined the government from relying on that Notice. Because the government did not rely on the Notice while the injunction was in effect, we REVERSE the contempt order entered against it.

## I.

The Centers for Medicare & Medicaid Services (CMS) is a federal agency that administers the Medicare program. Medicare reimburses qualified nursing facilities for certain services that they provide to their patients. Payments made throughout the year are typically interim payments[1]—estimates of what is owed for the year's services based on data earlier submitted.[2] Because the estimated, interim payments may not match what Medicare actually owes at the fiscal year's end, Medicare makes "[a] retroactive adjustment based on actual costs . . . at the end of a reporting period."[3]

To facilitate determination of "actual costs," providers must submit a "[c]ost report[]" within about five months "after the last day of the [annual] cost reporting period."[4] "Fiscal intermediaries" help to process these reports. An intermediary has thirty days from the receipt of a report to determine whether the report satisfies procedural filing requirements.[5] After accepting a report as procedurally adequate, intermediaries must make "an initial/tentative retroactive adjustment . . . within 60 days of the acceptance of the provider's cost

---

[1] *See* 42 U.S.C. § 1395g(e); 42 C.F.R. § 413.350(b); *id.* § 413.64(h)(3), (5).

[2] *See* 42 C.F.R. §§ 413.64(e), 413.350(b)(2).

[3] *Id.* § 413.64(a); *see also id.* §§ 413.64(f), 413.60.

[4] *Id.* § 413.24(f)(2)(i); *see also id.* §§ 413.20; 413.24.

[5] *Id.* § 413.24(f)(5)(iii).

2

report."[6] A final adjustment is made later, following an audit,[7] and may be appealed to a Provider Reimbursement Review Board (PRRB).[8] The Secretary of the Department of Health and Human Services (HHS) may review a PRRB decision.[9] Providers "have the right to obtain judicial review of any final decision of the Board or of any reversal, affirmance, or modification [of the Board's decision] by the Secretary."[10]

Oaks is a nursing facility that provided healthcare compensable by Medicare. CMS determined that Oaks was no longer eligible to participate in the Medicare (and Medicaid) programs. By letter dated April 9, 2010, CMS informed Oaks that its "Medicare and Medicaid agreements [would] terminate May 9, 2010."

On May 5, 2010, a few days before the scheduled termination, Oaks sued defendants ("the government") in the United States District Court for the Middle District of Louisiana, seeking injunctive relief and mandamus. On May 21, 2010, the district court preliminarily enjoined the government from "acting in accordance with the Notice of Termination . . . relative to [Oaks's] Medicare and Medicaid Provider Agreement." The court's order further provided that the government was:

> Enjoined from terminating The Oaks Medicare and Medicaid Provider Agreements or taking any action on the basis of the Notice of Termination dated April 9, 2010, such as revoking their billing privileges for existing and new residents admitted after May 9,

[6] CENTERS FOR MEDICARE & MEDICAID SERVICES, PUB. 100-06, MEDICARE FINANCIAL MANAGEMENT MANUAL, ch. 8, § 10.5, *available at* http://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/fin106c08.pdf (citing 42 C.F.R. § 413.64); *see also* 42 C.F.R. § 413.64(f)(2).

[7] 42 C.F.R. § 413.64(f)(2).

[8] 42 U.S.C. § 1395oo.

[9] *Id.* § 1395oo(f)(1).

[10] *Id.*

> 2010, or refusing to pay for its services rendered thereunder after May 9, 2010, and [was] enjoined from involuntarily relocating the residents of the Oaks unless and until [the injunction expired].

The parties agree that the preliminary injunction expired on June 16, 2011. The government agreed to a temporary restraining order, which lapsed July 8, 2011. Two weeks later, by letter dated July 22, 2011, CMS contacted Oaks "to confirm that [Oaks] was terminated from participation in the Medicare/Medicaid programs effective May 9, 2010." Between May 5, 2010—the day Oaks filed its complaint—and August 9, 2011—a few weeks after the restraining order lapsed—the government paid Oaks $2,047,115.14.

On December 30, 2011, Oaks nevertheless moved to initiate the contempt proceedings that gave rise to this appeal. Its complaint appears to be based on three grounds. First, Oaks contended that it was not paid for services described in a 2010 cost report that it submitted in May 2011, including services provided from January 1 to June 8, 2010. Second, the government discontinued Oaks's access to CMS's electronic billing system around July 22, 2011, denying it the ability to submit billing information for some services provided during the effective period of the injunction. Third, the government has refused to pay for services provided after June 8, 2010—thirty days after the originally scheduled termination date of May 9.

The district court held the government in contempt "for failure to abide by the terms of the preliminary injunction previously issued in this case." Although the court did not further explain its order, at a hearing on the motion, it stated that the injunction "direct[ed] that the status quo be maintained." The court was evidently concerned that Oaks would not be paid for services provided during the period in which the injunction was in effect. Accordingly, the contempt order required the government to "reimburse" Oaks in the amount of $704,728.18: "the unpaid amount owed to [Oaks] for services rendered during the effective period of this Court's injunction." The court calculated the figure by crediting "a

4

report by Ed LeBreton, plaintiff's expert consultant on [the] amount of damages owed," and subtracting expenses incurred after the injunction had expired. On appeal, the government contends that the contempt order should be reversed.

## II.

We review the district court's contempt order for an abuse of discretion, respecting the district court's factual findings unless they are clearly erroneous.[11] The scope of a preliminary injunction, however, "is a question of law to be determined by the independent judgment of this Court."[12]

The government challenges the contempt order on two grounds. First, it contends that the injunction required it only to "delay . . . effectuation of the termination of a provider agreement," a requirement with which the government claims to have complied while the injunction was in effect. Second, the government contends that *if* the injunction required it to do more than delay termination—if it "purport[ed] to divest the Secretary of the authority to resolve Medicare billing disputes"—then the district court lacked jurisdiction to enter the injunction. Because we agree that the government complied with the injunction by delaying effectuation of the termination notice, we will not reach the second question.

---

[11] *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 46 (5th Cir. 1992).

[12] *Drummond Co. v. Dist. 20, United Mine Workers*, 598 F.2d 381, 385 (5th Cir. 1979).

### III.

The district court's contempt order was civil and compensatory in nature.[13] To obtain a civil contempt order, Oaks had to prove, by clear and convincing evidence, that: (1) the preliminary injunction was in effect at the time of the government's supposedly contemptuous conduct;[14] (2) the injunction, neither vaguely nor ambiguously, required the government to perform or abstain from certain conduct;[15] and (3) the government failed to comply with the injunction's requirement(s).[16] In the context of a contempt proceeding, evidence is clear and convincing only if it "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established"; it must "enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case."[17]

As pertinent here, the injunction forbade the government from "taking any action on the basis of the Notice of Termination . . ., such as revoking [Oaks's] billing privileges . . . or refusing to pay for its services rendered . . . after May 9, 2010." Thus, to violate the requirements of that injunction, the government had to act "on the basis of" the Notice—the Notice, in other words, must have caused the government to act differently than it would have otherwise. Accordingly, given the showing required for a civil contempt order, contempt was appropriate

---

[13] *See Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976) ("Compensatory civil contempt reimburses the injured party for the losses and expenses incurred because of his adversary's non-compliance."); *see also Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 375 (5th Cir. 2003); *Nat'l Mar. Union v. Aquaslide 'N' Dive Corp.*, 737 F.2d 1395, 1400 (5th Cir. 1984); CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2960 (2012); *cf. Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961–62 (5th Cir. 1995).

[14] *See Whitcraft v. Brown*, 570 F.3d 268, 271 (5th Cir. 2009); *Travelhost*, 68 F.3d at 962.

[15] *See Whitcraft*, 570 F.3d at 271; *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 383 (5th Cir. 1999); *Matter of Baum*, 606 F.2d 592, 593 (5th Cir. 1979).

[16] *Whitcraft*, 570 F.3d at 271.

[17] *Travelhost*, 68 F.3d at 961 (citation omitted) (internal quotation marks omitted).

only if Oaks proved, by clear and convincing evidence, that the Notice affected the government's conduct while the injunction was in effect. Oaks has not done so.

Oaks's position rests on a misreading of the injunction. Oaks treats the injunction as requiring the government *to pay* for services. But the injunction instead forbids the government from "refusing to pay" based on the Notice. The government argues that if it had not tried to terminate Oaks from the Medicare program, Oaks would have received only "preliminary[,] partial payments" for services provided while the injunction was in effect. Aside from its argument about the 2010 cost report, Oaks does not dispute that it *did* receive the payments due during the effective period of the injunction—namely, those preliminary, partial payments. In short, then, the government "[maintained] the status quo" during the effective period of the injunction: a status quo in which Oaks would not have received full, non-preliminary payment for services rendered. Whether the government would have later made additional payments (but for the Notice) is beside the point; acting "on the basis of" the Notice *after* the injunction lapsed is not contemptuous. The same analysis applies to Oaks's complaint about being cut off from Medicare's electronic billing system. Because the government cut off Oaks after the injunction was no longer in force, the government did not thereby violate the injunction.

The 2010 cost report presents a closer question. Oaks complains that a fiscal intermediary issued an initial/tentative adjustment of $0.00 for the 2010 reporting period, even though the injunction was in effect when the intermediary received that report. In other words, Oaks contends that during a portion of 2011 in which the injunction *was* in effect, an intermediary refused to make an adjusted payment that it would have dispersed but for the Notice.

The record does not support this argument. Oaks's 2010 cost report was postmarked May 31, 2011. The relevant fiscal intermediary received that report on June 2, 2011. It accepted the report on June 30, 2011. A manager at the

intermediary declared—without apparent contradiction, and in line with CMS's Manual for intermediaries—that the intermediary had 60 days to make a tentative adjustment. Consequently, the intermediary had until August 29 to make an adjustment—long after the injunction and restraining order had expired. The record does not indicate that the intermediary would have acted more expeditiously but for the Notice. Oaks's argument to the district court was misleading, presumably unwittingly.

**\* \* \***

With the benefit of a clearer explanation than was given the able district court, we are persuaded that the government complied with the preliminary injunction while that injunction was in effect. We VACATE the finding of contempt and REVERSE the judgment of the district court.[18]

---

[18] In so ordering, we do not authorize a "collateral attack" on the injunction. The point is not that the injunction was invalid, it is that regardless of whether the injunction was valid, the injunction did not proscribe the government's conduct.