# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 12, 2016

Lyle W. Cayce
Clerk

————

No. 15-20243

————

In the Matter of: SKYPORT GLOBAL COMMUNICATIONS, INCORPORATED, formerly known as Skyport International, Incorporated, doing business as SkyPort International PC, doing business as SkyComm International, Incorporated,

Debtor.

-------------------------------------------------------

SAMUEL GOLDMAN; FRANKLIN CRAIG,

Appellants,

v.

BANKTON FINANCIAL CORPORATION, L.L.C.; ROBERT KUBBERNUS; BALATON GROUP, INCORPORATED; BANKTON FINANCIAL CORPORATION; TRUSTCOMM, INCORPORATED,

Appellees.

-----------------------------------------------------------------------------

In the matter of:  SKYPORT GLOBAL COMMUNICATIONS, INCORPORATED, formerly known as Skyport International, Incorporated, doing business as SkyPort International PC, doing business as SkyComm International, Incorporated,

Debtor.

-------------------------------------------------------

No. 15-20243

FRANKLIN CRAIG,

      Appellant,

v.

TRUSTCOMM, INCORPORATED; ROBERT KUBBERNUS; BALATON
GROUP, INCORPORATED,

      Appellees.

------------------------------------------------------------------------------------

In the matter of:  SKYPORT GLOBAL COMMUNICATIONS,
INCORPORATED, formerly known as Skyport International, Incorporated,
doing business as SkyPort International PC, doing business as SkyComm
International, Incorporated,

      Debtor.

-------------------------------------------------

SAMUEL GOLDMAN; FRANKLIN CRAIG,

      Appellants,

v.

TRUSTCOMM, INCORPORATED, formerly known as Skyport Global
Communications, Incorporated; ROBERT KUBBERNUS; BALATON
GROUP, INCORPORATED; BANKTON FINANCIAL CORPORATION,
L.L.C., BANKTON FINANCIAL CORPORATION,

      Appellees.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 4:13-CV-3041, 4:13-CV-3044, 4:13-CV-3047

---

2

No. 15-20243

Before ELROD, GRAVES, and COSTA, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:*

This is an appeal stemming from a bankruptcy court's order holding attorney Samuel Goldman and Franklin Craig in contempt for violating the court's preliminary injunction and assessing attorneys' fees and expenses against them. The district court affirmed the bankruptcy court. We **AFFIRM**.

## I.     Facts

This appeal involves one of many disputes arising out of the bankruptcy proceedings of SkyPort Global Communications, Inc., now known as TrustComm, Inc. (SkyPort). SkyPort filed for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Southern District of Texas. SkyPort's reorganization plan provided for SkyPort's merger with its sole shareholder, SkyComm Technologies Corporation (SkyComm), with all shares of stock owned by SkyComm's shareholders to be canceled and all shares of SkyPort to be reissued to Balaton Group, Inc. The bankruptcy court confirmed SkyPort's reorganization plan in August 2009. Its confirmation order enjoined derivative claims filed on behalf of SkyPort or SkyComm, but did not enjoin direct claims against third parties.

In February 2010, a group of 49 investors, collectively referred to as the Schermerhorn parties, filed a Texas state court petition seeking $32 million in damages for various misdeeds allegedly committed in connection with investments in and management of SkyPort and SkyComm. Appellant Samuel Goldman represented the Schermerhorn parties. The defendants removed the state court action to the bankruptcy court and sought a preliminary injunction

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

to preserve the status quo pending a determination by the bankruptcy court as to which claims included in the petition were barred by the injunction contained in the confirmation order.

At the bankruptcy court's preliminary injunction hearing, Robert Kubbernus, one of the state court defendants and the Chairman of the Board of Directors at SkyPort, testified that the Schermerhorn parties had been contacting people associated with SkyPort, including its former president, Dawn Cole. The bankruptcy court announced at the hearing that it was granting the motion for a preliminary injunction. On June 10, 2010, the bankruptcy court entered its preliminary injunction. The injunction order temporarily enjoined the Schermerhorn parties from *pursuing any and all claims or causes of action*, derivative or otherwise, against the defendants, and *from contacting SkyPort's former or current* vendors, *employees*, and customers without permission of SkyPort's counsel or the bankruptcy court.[1] The preliminary injunction contained Goldman's signature, which indicated his agreement as to the form of the order. The Schermerhorn parties never appealed the injunction.

Beginning the day the injunction was entered, and continuing over the next several months, Goldman, Craig, and Cole engaged in extensive communication that gave rise to the sanctions in this case. Craig was an investment advisor to several of the Schermerhorn parties and had accused Kubbernus of fraud and ousted him from management of another fund. He was also a personal friend of Goldman's. Although Craig was not a party to the litigation in this case, his e-mails reveal his awareness of the injunction.

---

[1] The order specifically states that "Plaintiffs may contact former and current vendors, employees, and customers of the Debtor *if and only if* a written request is made by Plaintiffs' counsel to counsel for SkyPort, and counsel for SkyPort either a) agrees to the proposed contact or b) does not respond within 1 business day."

No. 15-20243

Specifically, Cole sent Goldman and Craig an e-mail complaining that information she had provided to Craig was being used by Goldman against Kubbernus without her permission. Further, Craig and Goldman communicated by telephone and e-mail about contacting Cole. Craig sent Cole an e-mail describing Kubbernus as a "desperate criminal" and urging her that "[w]e need to do the right thing and put this criminal away." Cole called Craig twice the next day and Craig reported on the conversations to Goldman. Among other communications, Craig e-mailed Cole on June 18, telling her to call Goldman and stating that "[h]e may need some info from you" and that she would "do better on our side." Craig forwarded Cole's response e-mail to Goldman. Goldman sent Craig an e-mail asking about Cole's claims against Kubbernus and stating that he could help her get a lawyer. Craig forwarded the e-mail to Cole. The same day, Craig wrote to Cole that he had talked with Goldman, that Cole should "join our ranks NOW," that the Schermerhorn parties' expense account might be used to pay for Cole's attorney, and that "I am sure that Sam [Goldman] and I, we can find a deal . . . but Sam needs your 100% cooperation." Craig forwarded his message to Goldman.

This pattern of Craig communicating separately with Goldman and Cole, then forwarding their communication to each other, continued through June, July, and August.[2] On June 20, Goldman wrote to Craig that he did not want Craig talking to Cole except at her initiative, but also asked questions about Cole's possible help. Craig conveyed these questions to Cole and then forwarded her response to Goldman. Ultimately, after a series of e-mails, Goldman wrote to Craig that "I do not want to create an appearance that we are using you to communicate with [Cole]." Nevertheless, the communications

---

[2] The bankruptcy court extensively chronicled these communications in thirty-seven pages of its opinion imposing contempt sanctions. We include only a sampling of the most significant communications.

continued, and Craig continued to forward his e-mail conversations with Cole to Goldman.

On July 1, after Craig and Cole spoke by telephone, Craig wrote to Goldman that he had spoken to Cole, that she was willing to "join our side" and "go[] after" Kubbernus, and that she was "very interested in the prospect of our lawyers representing her" and of suing Kubbernus. Craig then asked Goldman, "How do you want to proceed?" In the following four days, Cole, Craig, and Goldman exchanged over 50 e-mails discussing how to convey Cole's information to the bankruptcy judge and obtain permission for Goldman to talk to her without disclosing their communications. In one of these e-mails, Craig wrote to Goldman, "I just lied to [Cole] about sending you the emails so PLEASE don't use them w/o her express permission" and noted that Cole was right in that "you shouldn't be seeing anything BEFORE the judge gives you permission to talk to her."

Over the next month, Cole and Craig exchanged more than 30 e-mails about the provision of legal representation to Cole, which included an agreement by Craig to provide her $10,000 for a legal retainer. Goldman was aware of these communications and ultimately located legal counsel to represent Cole.

## II.    Bankruptcy Court Proceedings

In April 2011, the Schermerhorn parties moved to dissolve the preliminary injunction. At the motion hearing, as part of its third motion for contempt, SkyPort announced the discovery of 46 instances in which the Schermerhorn parties had violated the bankruptcy court's injunction by communicating with Cole, a former SkyPort employee. In support of this assertion, SkyPort introduced into evidence many of the e-mails between Craig and Cole. The bankruptcy court denied the Schermerhorn parties' request to dissolve the injunction and continued the hearing on the contempt motion to

allow the parties to address the e-mails. After discovery, the bankruptcy court held seventeen days of evidentiary hearings spanning eleven months on the motion to dissolve the injunction, the contempt motion, and other pending motions.

On August 7, 2013, the bankruptcy court issued a 187-page opinion finding Goldman and Craig in contempt. The bankruptcy court stated that the purpose of its opinion was "to discuss Goldman's and Craig's contumacious conduct, to restore integrity to the judicial process, and most importantly, to affirm that its orders cannot be 'flouted, obstructed, and violated with impunity.'" Although the bankruptcy court found that "[t]he SkyPort parties have not demonstrated that they suffered harm as a result of Goldman and Craig's conduct," it nevertheless awarded them attorneys' fees and costs as "compensation" for their expenses incurred in "bringing Goldman and Craig's contempt to this Court's attention." The bankruptcy court declined to award punitive damages, recognizing that sanctions for civil contempt could only be compensatory or coercive, and declined to award a coercive bond against future violations or to impose a permanent injunction. A month later, after a hearing on the amount of damages, the bankruptcy court awarded monetary sanctions to the SkyPort parties. The award was one quarter of the requested attorneys' fees and 95% of the requested expenses, in the total amount of $137,513, for which Goldman and Craig were held jointly and severally liable.

### III.   District Court Proceedings

Goldman and Craig appealed the bankruptcy court's ruling to the district court, which affirmed the bankruptcy court's ruling in all respects. The district court's 119-page opinion affirmed fifteen orders of the bankruptcy court—including the orders at issue in this case—that had been appealed as part of four civil actions in the district court, and dismissed all four cases. A separate panel of our court affirmed the judgment of the district court as it related to an

No. 15-20243

order of the bankruptcy court imposing sanctions on the Schermerhorn parties for filing a state court petition that contained misrepresentations and claims barred by the reorganization plan. *See In re Skyport Glob. Commc'n, Inc.*, No. 15-20246, 2016 WL 1042526 (5th Cir. Mar. 14, 2016) (unpublished).

## IV.   Analysis

Goldman and Craig now argue that: (1) the bankruptcy court lacked jurisdiction because the nature of the contempt proceeding was criminal; (2) the attorneys' fees assessed were not reasonable and necessary because neither compensatory damages nor coercive relief was granted; (3) the award was erroneous because the preliminary injunction was dissolved; and (4) Goldman and Craig did not violate the preliminary injunction as they reasonably understood it.

### A.

"Like the district court, this court reviews a bankruptcy court's findings of fact for clear error, and its legal conclusions de novo." *In re Bradley*, 588 F.3d 254, 261 (5th Cir. 2009). "Where the district court has affirmed the bankruptcy court's factual findings, we will only reverse if left with a firm conviction that error has been committed." *Id.* (citation omitted). We review a bankruptcy court's discretionary assessment of monetary sanctions for contempt under an abuse of discretion standard, *id.*, but our review is not perfunctory, *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013) (discussing preliminary injunctions in the district court). "A court abuses its discretion when its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995).

### B.

The bankruptcy court issued a written injunction order under Rule 65 of the Federal Rules of Civil Procedure. The court, in its own words, "issued the

injunction in order to prevent irreparable harm to the reorganized debtor," SkyPort. Goldman and Craig conspired to thwart this order by pursuing barred claims and impermissibly contacting a former employee of SkyPort. They now contend that the bankruptcy court exceeded its authority in sanctioning them. We do not agree.

"'A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Hornbeck Offshore Servs., L.L.C.*, 713 F.3d at 792 (quoting *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995)). "The first duty of an appellate court in reviewing a contempt judgment is to determine whether the nature of the contempt proceeding was civil or criminal." *Smith v. Sullivan*, 611 F.2d 1050, 1052 (5th Cir. 1980); *accord Bradley*, 588 F.3d at 263.

A bankruptcy judge has jurisdiction to impose civil sanctions, but not criminal sanctions. *In re Hipp, Inc.*, 895 F.2d 1503, 1521 (5th Cir. 1990). Goldman and Craig maintain that the bankruptcy court exceeded its authority and conducted a criminal contempt proceeding.

As we explained in depth in *Bradley*, to determine whether a contempt order or judgment is criminal or civil, we look to its primary purpose. 588 F.3d at 263; *accord Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990). The bankruptcy court characterized the proceedings as "concern[ing] compensatory or remedial civil contempt."[3] "Civil contempt . . . can be used to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *Travelhost, Inc.*, 68 F.3d at 961–62 (5th Cir. 1996). "[R]emedial contempt is civil, because it remedies the consequences of defiant

---

[3] "'[A] court's characterization of its proceedings [as civil or criminal] is a factor to be considered in determining the character of a contempt, although it is not conclusive.'" *Id.* at 263 n.7 (quoting *Lewis v. S. S. Baune*, 534 F.2d 1115, 1119 (5th Cir. 1976)).

conduct on an opposing party, rather than punishing the defiance per se." *Bradley*, 588 F.3d at 263–64.[4]

We agree with the bankruptcy court's characterization. Essentially, the sanction restores the SkyPort parties to where they were before they incurred attorneys' fees in an attempt to ensure compliance with the injunction. *See Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977) (observing that courts may "order[] the award of attorneys' fees for compensatory purposes" where a party "necessarily expended [fees] in bringing an action to enforce" the injunction); *see also* A.S. Klein, Annotation, *Allowance of Attorneys' Fees in Civil Contempt Proceedings*, 43 A.L.R. 3d 793, § 2 (1972) ("Almost without exception it is within the discretion of the trial court to include, as an element of damages assessed against the defendant found guilty of civil contempt, the attorneys' fees incurred in the investigation and prosecution of the contempt proceedings. . . ."). Because the sanction compensated the SkyPort parties for their enforcement of the injunction, we hold that the bankruptcy court had jurisdiction to impose it.

## C.

Next, Goldman and Craig argue that the attorneys' fees assessed were not reasonable and necessary because neither compensatory damages nor coercive relief was granted. Specifically, they argue that the "amount involved and the result obtained" was zero. We disagree.

As previously stated, the bankruptcy court's contempt order compensates the SkyPort parties for the attorneys' fees that they incurred in seeking compliance with the bankruptcy court's order and protecting the

---

[4] A criminal contempt sanction serves "to punish the contemnor and vindicate the authority of the court," while a civil contempt sanction serves "to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation." *Id.* at 263.

debtor. Here, the bankruptcy court carefully calculated the fees and awarded far less than was requested.[5] The contempt order reasonably compensates the SkyPort parties for a portion of the fees and expenses they incurred as a result of Goldman and Craig's conduct.

## D.

Goldman and Craig also argue that the preliminary injunction was dissolved, and thereafter no relief could be awarded. It is true that "[i]f the civil contempt proceeding is coercive in nature, the general rule is that it is mooted when the proceeding out of which it arises is terminated." *Travelhost, Inc.*, 68 F.3d at 962 (quoting *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826

---

[5] "In this circuit, courts apply a two-step method for determining a reasonable attorney's fee award." *Combs v. City of Huntington, Texas*, 829 F.3d 388, 391 (5th Cir. 2016) (citation omitted). "The court must first calculate the lodestar, 'which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work.'" *Id.* at 392 (quoting *Jimenez v. Wood Cty.*, 621 F.3d 372, 379 (5th Cir. 2010)). "In calculating the lodestar, '[t]he court should exclude all time that is excessive, duplicative, or inadequately documented.'" *Id.* (quoting *Jimenez*, 621 F.3d at 379–80). "[T]he lodestar is presumed reasonable. . . ." *Id.* (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010)). The court may, however, "enhance or decrease it based on the twelve *Johnson* factors." *Id.* (citing *Jimenez*, 621 F.3d at 380). "The court must provide a reasonably specific explanation for all aspects of a fee determination." *Id.* (quotations and citations omitted).

> The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 391, n.1 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The bankruptcy court properly reduced the fee based upon the success of the SkyPort parties and its denial of some of the requested relief.

F.2d 392, 400 (5th Cir. 1987)). "However, if the contempt order is compensatory in nature, it is not mooted by termination of the underlying action." *Id.*

Here, the contempt order relates directly to a prolonged bankruptcy proceeding and compensates the SkyPort parties for attorneys' fees resulting from Goldman and Craig's contemptuous conduct. Thus, the preliminary injunction's dissolution does not change our analysis.

## E.

Goldman and Craig also argue that they did not violate the preliminary injunction as they reasonably understood it. Rule 65(d) provides that the order must "state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required." FED. R. CIV. P. 65(d).

Here, the language and terms of the order are clear. The preliminary injunction states, "Plaintiffs may contact former and current . . . employees . . . of the Debtor *if and only if* a written request is made by Plaintiffs' counsel to counsel for SkyPort, and counsel for SkyPort either a) agrees to the proposed contact or b) does not respond within 1 business day." The injunction also provides that the "Plaintiffs are temporarily enjoined from: pursuing any and all claims or causes of action, derivative or direct, against all of the Defendants."

Despite the clear terms of the injunction, Goldman and Craig continued to pursue evidence and witnesses—namely Cole. They encouraged Cole to pursue her own claims against Kubbernus in other courts by arranging for her counsel, providing for a "loan" for her counsel's retainer, and pursuing financial backing and support for the state court litigation. Goldman and Craig's attempts to implicate Cole as the primary communicator fail—they initiated contact with her on numerous occasions. They did not "inadvertently" violate the injunction.

No. 15-20243

### F.

Finally, Craig contends that he was not bound by the injunction because he was not specifically named in the order. The Federal Rules of Civil Procedure specifically mandate that an injunction binds "other persons who are in active concert or participation with [the parties and their attorneys]." FED. R. CIV. P. 65(d)(2)(C); *see also Whitcraft v. Brown*, 570 F.3d 268, 272 (5th Cir. 2009) ("A court order binds not only the parties subject thereto, but also non-parties who act with the enjoined party."). Craig was actively involved in the case, knew about the injunction, and knew that he was restrained from contacting Cole and other employees. Goldman wrote to Craig that "I do not want to create an appearance that we are using you to communicate with [Cole]." Yet, that is exactly what happened. Accordingly, Craig was also bound by the injunction and improperly colluded with Goldman to violate it.

### V. Conclusion

The record reveals that Goldman and Craig repeatedly violated the injunction. The record also demonstrates that they were aware of the terms of the injunction, yet they willfully violated it. The SkyPort parties spent a substantial amount to ensure compliance and the bankruptcy court acted appropriately in awarding fees in a civil contempt proceeding. Accordingly, we **AFFIRM**.